UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ROMEL CATOE,

Defendant.

**MEMORANDUM & ORDER**
22-CR-243 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On January 22, 2024, Defendant pleaded guilty to Counts Two and Three of a five-count Superseding Indictment in 22-CR-243, charging him with Hobbs Act Robbery and Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1, ECF No. 83; Superseding Indictment ¶¶ 2–3, ECF No. 56. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 120 months, to be followed by 2 years of supervised release with both special and standard conditions of supervision, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); forfeiture of $14,110.00 in accordance with the Amended Order of Forfeiture; and payment of a mandatory special assessment of $200.00.

## I. BACKGROUND

*Months-Long Plan to Rob Jane Doe One and Jane Doe Two*

In late October 2020, Defendant Romel Catoe and his co-defendant Matthew Sanchez began discussing the possibilities of robbing Jane Doe One and Jane Doe Two. Sealed Presentence Investigation Report ("PSR") ¶ 10, ECF No. 99. Defendant texted Sanchez and told him two co-conspirators had learned where Jane Doe One and Jane Doe Two worked; the two women worked as dancers in Queens, New York. *Id.* Defendant told Sanchez to bring his GPS so they could "tag" the victims' cars and determine where they live. *Id.* Between October 2020 and the first robbery on January 27, 2021, Defendant and Sanchez attached GPS tracking devices to Jane Doe One's and Jane Doe Two's cars. *Id.* ¶ 11. Defendant and Sanchez regularly visited both the

victims' residences and workplaces in the weeks leading up to the first robbery. *Id.* ¶ 12. Defendant and Sanchez also exchanged text messages confirming Jane Doe One had young children who might be present at her residence during a robbery. *Id.* Defendant stated the presence of children would not deter him. *Id.*

Defendant and Sanchez also discussed, over text message, the use of both real and fake firearms in connection with other criminal activity. *Id.* ¶ 15.

*Robbery on January 27, 2021*

In the early morning of January 27, 2021, Defendant and co-defendant Sanchez broke into Jane Doe One's residence. *Id.* ¶ 7. Jane Doe One was not home at the time, but her partner and young children were. *Id.* Defendant and Sanchez zip-tied Jane Doe One's partner in the bathroom, put a weapon to his head, and demanded money and property. *Id.* Defendant and Sanchez stole cash proceeds of approximately $14,110.00 of Jane Doe One's and Jane Doe Two's work and luxury handbags worth approximately $22,114.00. Sealed Addendum to Presentence Investigation Report ("Sealed PSR Addendum") at 1–2, ECF No. 119; Sealed PSR ¶ 7. Authorities have not recovered the cash taken by Defendant and Sanchez. Sealed PSR ¶ 7.

*Disposition of Stolen Cash and Sales of Stolen Goods*

After the January 27, 2021 robbery, Defendant brought the stolen cash to Philadelphia, Pennsylvania. *Id.* ¶ 14. Defendant and his girlfriend deposited the cash into her account at a Philadelphia Federal Credit Union branch. *Id.* Defendant and his girlfriend made deposits of $600, $97, $2,000, $2,006, and $5,007 into her bank account. *Id.* They also exchanged the cash for larger denominations—specifically, they exchanged $2,400 and then $2,000 in the days following the robbery. *Id.*

As for the luxury handbags, on January 29, 2021, co-defendant Sanchez sent Defendant photos of seven luxury handbags, noting some bags had already been sold. *Id.* ¶ 13.

*Attempted Robbery on February 5, 2021*

In the early morning of February 5, 2021, Defendant and co-defendant Mitchell again broke into Jane Doe One's residence. *Id.* ¶ 8. Co-defendant Sanchez worked as the getaway driver during this second robbery. *Id.* Jane Doe One, her partner, their two children, and two of the couple's friends were home. *Id.* Defendant and Mitchell ordered Jane Doe One and her partner to the bathroom, where they zip-tied them. *Id.* According to Jane Doe One, Defendant also told Jane Doe One to take off her underwear. Gov't Sentencing Mem., Ex. 1 (Victim Impact Statement) at 1, ECF No. 118. Defendant and Mitchell pointed their weapons at the two young children. Sealed PSR ¶ 8. While Defendant and Mitchell searched the house, one of the children called the police. *Id.* After NYPD officers arrived, Defendant and Mitchell fled. *Id.* They left behind a Daisy Air Rifle BB gun and Defendant's cell phone. *Id.*

*Procedural History*

On June 22, 2022, ATF agents arrested Defendant in Pennsylvania. *Id.* ¶ 24. On June 12, 2023, a grand jury returned a five-count Superseding Indictment against Defendant Catoe and his two co-defendants, Matthew Sanchez and Kareef Mitchell. Superseding Indictment ¶¶ 1–9. On January 22, 2024, Defendant pleaded guilty to Counts Two and Three of the Superseding Indictment, charging him with Hobbs Act Robbery and Attempted Hobbs Act Robbery respectively, both in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment for the Indictment charges of 135 months or below. *Id.* ¶ 4.

On January 29, 2024, co-defendant Matthew Sanchez pleaded guilty to one count of Hobbs Act Robbery and one count of Attempted Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a). Plea Agreement as to Matthew Sanchez in 22-CR-243 (S-1), ECF No. 87.

On February 15, 2024, co-defendant Kareef Mitchell pleaded guilty to Count One of the Superseding Indictment, charging him with Hobbs Act Robbery Conspiracy in violation of 18 U.S.C. § 1951(a). Plea Agreement as to Kareef Mitchell in 22-CR-243 (S-1), ECF No. 91.

## II. LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy

statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III. ANALYSIS

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### *1. Family and Personal Background*

Defendant was born on February 1, 1990, in Brooklyn, New York. Sealed PSR ¶ 82. Defendant's paternal grandmother died of a drug overdose when Defendant was a toddler. *Id.* In response, Defendant's father murdered the drug dealer who had provided the supply. *Id.* Defendant's father was incarcerated for most of Defendant's childhood; they did not meet until Defendant's adulthood. *Id.* Defendant's mother, while present, was abusive and negligent, and Defendant maintains a strained relationship with her. *Id.* Defendant recalls regular beatings from his childhood, *see* Def. Sentencing Mem. at 5, and being told by his mother he needed to fend for himself. Sealed PSR ¶ 86. When Defendant was a teenager, his home burned down in a fire caused by a neighbor, traumatizing him. *Id.* ¶ 87; Def. Sentencing Mem. at 5. Defendant had been home alone, as his mother was out with a boyfriend; to escape the fire, Defendant jumped from the window. Sealed PSR ¶ 87; Def. Sentencing Mem. at 5. While Defendant's basic needs were met when he was young, he did not experience comfort. Sealed PSR ¶ 85.

Although never married, Defendant is the father of four children. Sealed PSR ¶¶ 90, 92, 97; Def. Sentencing Mem. at 6. Defendant was young when he fathered the older two children

and felt unready to raise them, but he has reportedly played a material role in his younger two children's lives. Def. Sentencing Mem. at 6.

2. *Educational and Employment History*

Defendant attended Brownsville Academy High School in Brooklyn, New York, but dropped out prior to graduation. Def. Sentencing Mem. at 7, 19. Defendant later acquired sufficient credits to earn his high school diploma at age 21. Sealed PSR ¶ 110; Def. Sentencing Mem. at 7; 19 (high school transcript).

In 2020, during the pandemic, Defendant experienced economic stress. *See* Def. Sentencing Mem. at 6. He opened his own business "Brooklynboy Cosplay," through which he sold cosplay props both online and in person. Sealed PSR ¶ 120. Because the business was not profitable, *see id.*, Defendant then worked as a full-time cook at a Shake Shack restaurant in Philadelphia for eight months. *Id.* ¶ 119. Defendant then decided to move south, in search of more affordable living. Def. Sentencing Mem. at 6.

In early 2021, Defendant worked as a food handler for an assisted living facility in Myrtle Beach, South Carolina. Sealed PSR ¶ 117. Around this same time, Defendant also worked as a part-time sales associate at a Nike shoe factory, also in Myrtle Beach. *Id.* ¶ 118. In late 2021, Defendant worked as a brake tester for subway cars in North Carolina. *Id.* ¶ 116. Defendant then returned north to Philadelphia, where he reportedly worked at a glass factory between May and June 2022. *Id.* ¶ 115. Defendant has been in custody since June 2, 2022. *Id.* ¶ 114.

While incarcerated, Defendant has prioritized education. Def. Sentencing Mem. at 7. Defendant completed every instructional class in the education department, in addition to numerous college classes offered through Columbia University and New York University. *Id.*

He has participated in group therapy, including a course on anger management, and a non-residential substance abuse program. *Id.*

3. *Prior Convictions*

In addition to the conduct charged in the instant case, Defendant has one prior conviction. In 2018, at age 28, Defendant was arrested for driving a stolen car (Receiving Stolen Property, a Third Degree Felony) in Pennsylvania. Sealed PSR ¶ 75.

4. *Physical and Mental Health*

Defendant has suffered from mental health conditions while incarcerated. according to medical records and statements provided by defense counsel. Def. Sentencing Mem. at 7. Defendant reports he suffers from anxiety and depression since being detained at MDC Brooklyn. Sealed PSR ¶ 104; Def. Sentencing Mem. at 7. Defendant has been prescribed medication for these conditions. Sealed PSR ¶ 104; Def. Sentencing Mem. at 7.

5. *Substance Abuse*

Defendant has abused alcohol. Sealed PSR ¶ 108; Def. Sentencing Mem. at 7. He reports he stopped drinking at age 27 after his daughter caught him drinking to cope. Sealed PSR ¶ 108.

6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved twice robbing the same woman, threatening to kill her, her minor children and her relatives, and demanding she remove her underwear. *See* Victim Impact Statement at 1. The Court's sentence will deter others from engaging in similar acts and justly punish Defendant for his crimes. At the same time, the sentence gives due consideration to Defendant's engagement in rehabilitative activities while in custody pending sentencing. *See* Def. Sentencing Mem. Indeed, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Hobbs Act Robbery and one count of attempted Hobbs Act Robbery, both in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1. For *each* of these counts, Defendant faces a maximum term of imprisonment of twenty years and no minimum term of imprisonment. 18 U.S.C. § 1951(a). Defendant also faces a maximum term of supervised release of three years for each count. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e). And Defendant is ineligible for probation on both counts. 18 U.S.C. §§ 3561(a)(3) and U.S.S.G. §5B1.1(b)(2)-(3).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b)(3). However, Defendant appears unable to pay a fine. Sealed PSR ¶ 130. Furthermore, Defendant's counts of conviction are subject to forfeiture allegations as outlined in the Amended Order of Forfeiture. Amended Order of Forfeiture, ECF No. 121; *see also* Plea Agreement ¶ 2(g). Defendant also faces mandatory restitution in this case pursuant to 18 U.S.C. § 3663A. However, the final amount of restitution is unknown at this time. Sealed PSR Addendum at 3. Per guidance from *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003), the Court should not order restitution when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims. Finally, the Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A), for a total of $200.00.

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A). The applicable Guidelines provision for violations of the statute violated by Defendant, 18 U.S.C. § 1951(a), is U.S.S.G. § 2B3.1. This provision provides for a base offense level of 20.

All parties agree certain enhancements apply in this case. First, U.S.S.G. §2B3.1(b)(2)(A) authorizes a four-level enhancement for Defendant's use of a dangerous weapon, including using the weapon to threaten Jane Doe One and her minor children. Gov't Sentencing Mem. at 9. Second, U.S.S.G. §2B3.1(b)(4)(B) features a two-level enhancement for

physically restraining any person to facilitate the commission of the offense. Here, Defendant used zip ties to restrain the victims. *Id.* Third, U.S.S.G. §3A1.1(b) provides for a two-level enhancement for Defendant's knowledge that a victim of the offense was a vulnerable victim. Indeed, Defendant exchanged texts with a co-defendant before the robbery in which he acknowledged Jane Doe One's minor children might be present during the robbery and pointedly stated he did not care. *See* Gov't Sentencing Mem. at 1–2; *see also United States v. Chubalashvili*, 17-CR-709, 2023 WL 583119, at *5 (E.D.N.Y. Sep. 8, 2023) (Kuntz, J.) (applying the vulnerable victim enhancement where the defendant pointed his weapon at a minor during a Hobbs Act robbery).

The offense level is also enhanced by an additional level under U.S.S.G. §2B3.1(b)(7)(B), which authorizes a one-level enhancement for cases in which the loss amount exceeds $20,000 and is below $95,000. Here, although the parties disagree on the exact value of the stolen property, it clearly exceeds $20,000. *See* Sealed PSR Addendum at 1–2 (estimating Defendant and his co-defendants stole cash proceeds of at least $14,110.00 and luxury handbags worth approximately $22,114.00). Finally, the parties all agree the offense level is subject to an additional two-level enhancement after applying the multiple-count adjustment contemplated at USSG §3D1.4(a)-(c), resulting in a combined adjusted offense level of 31. *See id.* at 2.

All parties also agree certain reductions to the total offense level should apply here, including a two-level reduction under U.S.S.G. §3E1.1 (Acceptance of Responsibility) and a one-level reduction under U.S.S.G. §3E1.1(b) (timely notice to the Government of Defendant's intention to enter a guilty plea). *See* Plea Agreement ¶ 2; Gov't Sentencing Mem. at 6. The Government and Defense agreed to an additional one-level reduction under the public policy


goals enunciated in U.S.S.G. §5K2.0. *See* Gov't Sentencing Mem. at 6. These reductions result in a total offense level of 27.

Probation recommends a sentence at the low end of the guidelines. Specifically, probation recommends a sentence of seventy-eight (78) months of imprisonment; two (2) years of supervised release with special conditions; and payment of the mandatory two hundred dollar ($200.00) special assessment. Revised Probation Department Sentence Recommendation ("Rev. Prob. Sentencing Rec.") at 1, ECF No. 120. Defense counsel requests a below-guidelines sentence of time served and an unspecified period of supervised release. Def. Sentencing Mem. at 1. The Government recommends a sentence within the guidelines range. Gov't Sentencing Mem. at 1. This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

**E. Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding no others on its own, the Court proceeds to the next § 3553(a) factor.

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The parties have not raised arguments regarding unwarranted sentencing disparities in this case. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. CONCLUSION

Finally, the court has this to say. A man's home is his castle. A woman's home is her castle. Safety, security, and serenity constitute the core of domestic tranquility. When someone raises his or her right hand to take the oath of office as a federal judge, he or she promises to protect the nation and our citizens from all enemies, foreign and domestic.

Few enemies present a greater danger to the republic than armed men who would enter the castle of others' homes, point guns and curses at women and children in their homes, and threaten to harm them. Nothing justifies such evil behavior. This defendant personified the essence of the bogeyman: he did it with stealthy planning, he did it with technology, he did it with an accomplice, and he did it more than once. He did it for personal gratification and he did it for money. And he did it for the last time.

For the reasons set forth above, the Court sentences Defendant to 120 months of custody; 2 years of supervised release with both the standard and special conditions of supervised release; forfeiture of $14,110.00 in accordance with the Amended Order of Forfeiture; and the mandatory $200.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's

apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and its Sealed Addendum, as corrected herein, to the extent those findings are not inconsistent with this opinion.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 10, 2025
Brooklyn, New York